# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **KRISTEN JAMES PHILLIPS,** | ) | |
| | ) | 8:12CV338 |
| **Plaintiff,** | ) | |
| | ) | **FINDINGS AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| **MIDWEST TECHNOLOGIES, INC.,** | ) | |
| a Minnesota Corporation, and | ) | |
| **MIDWEST SPECIAL INSTRUMENTS** | ) | |
| **CORP.**, a Minnesota Corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter comes before the court on the plaintiff's Motion to Remand (Filing No. 6). The plaintiff filed a brief (Filing No. 9) and an index of evidence (Filing No. 8) in support of the motion. The defendants filed a brief (Filing No. 12) and an index of evidence (Filing No. 13) in response to the motion to remand. The plaintiff filed a brief (Filing No. 17) in reply.

On September 21, 2012, the defendants, Medical Technologies, Inc.[1] (MTI) and Midwest Special Instruments Corp. (MSI) (collectively MSI), removed this action from the District Court of Douglas County, Nebraska, to the United States District Court for the District of Nebraska. **See** Filing No. 1 - Notice of Removal. MSI alleges this action is removable pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1446 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. **See** Filing No. 1 - Notice of Removal ¶ 5. On September 28, 2012, Kristen James Phillips (Phillips) filed the instant motion to remand arguing diversity jurisdiction does not exist because there are no damages to establish the jurisdictional minimum under 28 U.S.C. § 1332. **See** Filing No. 6 - Motion to Remand. For the reasons set forth below,

---

[1] The defendants represent the plaintiff's reference to "Midwest" Technologies in the caption of the Petition for Declaratory Judgment in the District Court of Douglas County was an error, and that the plaintiff intended to name "Medical" Technologies, Inc. as one of the defendants. **See** Filing No. 1 - Notice of Removal.

the undersigned magistrate judge recommends Phillips' motion to remand be granted with respect to remand and denied for attorney's fees and costs.[2]

## BACKGROUND

Phillips' action arises from a dispute about whether the non-competition provision of his Non-Compete and Confidentiality Agreement (Agreement) with MSI is enforceable. **See** Filing No. 1-1 - Ex. A - Petition for Declaratory Judgement (Petition). Phillips alleges the following facts in the Petition. Phillips, a Nebraska resident, was employed at MSI's Omaha office and performed services related to hearing health in Douglas County. *Id.* ¶ 1. MSI and MTI are Minnesota corporations with their principal places of business in Minnesota and transact business in Nebraska. *Id.* ¶¶ 2-3; Filing No. 1 - Notice of Removal ¶¶ 8-9. On May 8, 2012, MSI purchased MTI's common stock and took assignment of all MTI's employment agreements. **See** Filing No. 13-1 - Grundtner Affidavit ¶ 2. MSI is a diagnostic equipment distributor for hearing health. *Id.* ¶ 3. MSI represents manufacturers of hearing and balance instrumentation and provides hearing instrument fitting and balance testing, as well as service and repair of such instruments. *Id.* ¶ 7.

---

[2] The court is entering this Findings and Recommendation in this matter in light of the split in court decisions over whether a magistrate judge has authority to rule on a motion to remand. **Compare** *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001) (finding "remand motions are dispositive and, as such, can only be entered by district courts"), *Williams v. Beemiller, Inc.*, 527 F.3d 259 (2d Cir. 2008), *Stefanik v. City of Holyoke*, 597 F. Supp. 2d 184, 185 (D. Mass. 2009), and *Johnson v. Tyson Fresh Meats, Inc.*, No. C-06-1002, 2006 WL 1004970, at *1 (N.D. Iowa Apr. 17, 2006), **with** *White v. State Farm Mut. Auto. Ins. Co.*, 153 F.R.D. 639 (D. Neb. 1993) (concluding remand of a case to the state court was not an Article III function and could be ordered by a magistrate judge). In *Vogel*, the court concluded:
> [W]e apply a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion. Applying that test, . . . we too find that a remand order is the functional equivalent of an order to dismiss. The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court.

*Vogel*, 258 F.3d at 517. **Accord** *First Union Mortgage Corp. v. Smith*, 229 F.3d 992 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998); **see also** *Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 241-42 (E.D.N.Y. 2005) (noting that "[m]ost district courts to have considered this issue have found remand to be within a magistrate judge's authority under 28 U.S.C. 636(b)(1)(A). On the other hand, every appellate court that has weighed the issue has determined a remand to be the functional equivalent of a dispositive order, and therefore beyond a magistrate judge's authority.") (collecting cases). The undersigned magistrate judge concludes a recommendation is the most appropriate course of action in this matter.

On October 17, 2005, Phillips signed the Agreement with MSI. **See** Filing No. 1-1 - Ex. A - Petition ¶ 8; Petition Ex. A - Agreement. The Agreement included a "Covenant Not to Compete." **See** Filing No. 1-1 - Petition Ex. A, § 2. The Agreement provides, in part:

> Section 2. Covenant Not to Compete.
> (a) <u>Covenant Against Competition</u>. In consideration of the premises of this Agreement and continuing employment, the Employee agrees to comply with the provisions of this Section, which provisions shall be referred to as the "Covenant Not to Compete."
>> (1) During the term of this Covenant Not to Compete, the Employee agrees not, directly or indirectly, to solicit any former or current customers of the Corporation or of any affiliate nor divert any business from the Corporation or any affiliate.
>> (2) During the term of this Covenant Not to Compete, the Employee agrees not, directly or indirectly, to engage in any business which is in competition with that of the Corporation or of any affiliate within any geographical location granted the Corporation by its vendors or manufacturers then in effect at the time of termination of employment. For purposes of this provision, the Employee will be deemed to engage in any business by being a shareholder (other than holding less than five percent (5%) of the shares of any publicly-held corporation) or director, officer, employee, consultant, independent contractor, or by serving in any capacity similar to the foregoing on behalf of said business.
>> (3) During the term of this Covenant Not to Compete, the Employee agrees not, directly or indirectly, to solicit for employment or employ any employee of the Corporation or any of its affiliates.
> (b) <u>Term of Covenant</u>. The term of this Covenant Not to Compete shall commence immediately and shall continue during the term of this Agreement for a period of one (1) year after Employee ceases to be employed by the Corporation or any affiliated entity.

*Id.*

While at MSI, Phillips worked as a service technician where he was responsible for calibrating and servicing MSI's customers' hearing and balance instrumentation, selling those services, and promoting medical products and supplies MSI distributed. **See** Filing No. 13-1 - Grundtner Affidavit ¶ 3. Phillips represented MSI's customers and prospective customers in Nebraska, Iowa, and South Dakota. *Id.* ¶ 4.

Robert Grundtner (Grundtner), Controller at MSI, determined MSI's annual revenue from Phillips' service sales was: $166,485 in 2011, $167,994 in 2010, and $170,887 in 2009. *Id.* ¶ 5. The revenue MSI received from customers, including, but not limited to Phillips' services sales, in Nebraska, Iowa, and South Dakota was: $1,715,521 in 2011, $1,804,927 in 2010, $1,882,764 in 2009. *Id.* ¶ 6. MSI's gross profit for equipment sales for 2009 through 2011 exceeded $450,000 per year. *Id.* More than twenty-five percent of the equipment sales each year were made to customers who Phillips also made service sales with on behalf of MSI. *Id.* MSI expects similar revenue from equipment and service sales in 2012 and 2013. *Id.* ¶¶ 5-6. Phillips received the following wages from MSI: $42,913.51 through August 10, 2012, $61,851.10 in 2011, $57,857.86 in 2010, and $58,021.70 in 2009. *Id.* ¶ 8. Phillips' annual salary in 2012 was $62,000. *Id.*

On August 10, 2012, Phillips resigned from his position with MSI. **See** Filing No. 1-1 - Ex. A - Petition ¶ 9. Subsequently, Phillips accepted employment with Audiology Systems, Inc. (Audiology). *Id.* ¶ 10. On August 13, 2012, Daniel J. Ballintine, MSI's legal counsel, sent Phillips a letter reminding Phillips to observe the Agreement's provision, which prohibits Phillips from working for MSI's competitors. *Id.* ¶ 11; Petition Ex. B.

On August 17, 2012, Phillips filed the Petition in the Douglas County District Court seeking a declaration that the Agreement's non-compete provision is unenforceable under Nebraska law and public policy. **See** Filing No. 8-1 - Phillips' Affidavit ¶ 2; Filing No. 1-1 - Ex. A - Petition ¶¶ 12-15.

## ANALYSIS

**A.     Remand**

Absent a federal question, as in the case at bar, the court must determine whether diversity of the parties exists in order to confer federal jurisdiction. **See** 28 U.S.C. §

4

1332(a). The United States District Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).

"[T]he party seeking removal based on diversity of citizenship bears the burden of proving, by a preponderance of the evidence, that the matter in controversy 'exceeds the sum or value of $75,000.'" *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010) (**quoting** 28 U.S.C. § 1332(a)). Since removal to federal court is a statutory right, and not one granted under the Constitution, removal jurisdiction must be narrowly construed in favor of the non-removing party. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941). A district court is required to resolve doubts concerning federal jurisdiction in favor of remand, strictly construing the removal statute. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). Moreover, "diversity jurisdiction in removal cases [is] narrower than if the case were originally filed in federal court by the plaintiff." *Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992). "Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Most recently, the Eighth Circuit stated "in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue." *Usery*, 606 F.3d at 1018. This is referred to as the "plaintiff's viewpoint rule." *Id.* at 1019. *Usery* follows from a long line of cases within the Eighth Circuit that measure the amount in controversy from the plaintiff's perspective. **See** *Smith v. Am. States Preferred Ins. Co.*, 249 F.3d 812, 813-14 (8th Cir. 2001); *Burns v. Mass. Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir. 1987); *Mass. State Pharm. Ass'n v. Fed. Prescription Serv., Inc.*, 431 F.2d 130, 132 (8th Cir. 1970); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814-16 (8th Cir. 1969); *Bishop Clarkson Mem'l Hosp. v. Reserve Life Ins. Co.*, 350 F.2d 1006, 1008 (8th Cir. 1965);

*Federated Mut. Implement & Hardware Ins. Co. v. Steinheider*, 268 F.2d 734, 737-38 (8th Cir. 1959) (relying on plaintiff's viewpoint in determining amount in controversy).

The Eighth Circuit has noted an approach different from the "plaintiff's viewpoint rule" and that "there are cases in other circuits that hold that when the costs to a defendant of losing a case exceed the benefit that a plaintiff would gain by winning it, the amount in controversy can sometimes be measured by the defendant's costs." *Usery*, 606 F.3d at 1019; **see also** *Hatridge*, 415 F.2d at 814-16 (recognizing "the possibility of utilizing the defendant's risk as a measure of federal jurisdiction" although using plaintiff's viewpoint in determining amount in controversy). However, the Eighth Circuit has "never endorsed this rule." *Id.*

Phillips argues the amount in controversy does not exceed the $75,000 jurisdictional amount necessary under 28 U.S.C. § 1332(a). **See** Filing No. 9 - Brief p. 3. Specifically, Phillips states he does not request a specific amount of damages. *Id.* ¶ 4. Phillips argues there is no measure of damages because he continues to work for his new employer without violating the Agreement. *Id.* ¶ 5. Phillips reiterates the Eighth Circuit utilizes the "plaintiff's viewpoint" when assessing the amount in controversy. **See** Filing No. 17 - Reply p. 1-6. Phillips argues MSI's evidence shows Phillips' salary never exceeded $75,000 and therefore remand is appropriate. *Id.* ¶¶ 2, 6-8.

MSI argues this court should measure the amount in controversy from MSI's perspective. **See** Filing No. 12 - Response p. 3-10. MSI argues the jurisdictional amount is satisfied after measuring the revenues and potential profits MSI could lose if Phillips is allowed to violate the Agreement and poach MSI's customers. *Id.* ¶¶ 1-5. MSI argues Phillips' annual services sales exceeded $160,000 and equipment sales in Phillips' territories exceeded one million annually. *Id.* MSI argues it is in position to lose these revenues once Phillips begins soliciting MSI's customers. *Id.* ¶ 11.

The parties are diverse because Phillips is a Nebraska citizen and MSI and MTI are Minnesota citizens with their principle places of business in Minnesota. **See** Filing No. 1 - Notice of Removal ¶ 7-9. MSI cites various cases that discuss using the defendant's perspective to measure the amount in controversy. However, the two Eighth Circuit Court

of Appeals cases MSI cites as supporting the defendant's perspective actually utilized the plaintiff's perspective.

MSI cites *Fitzgerald Railcar Services of Omaha, Inc. v. Chief Industries, Inc.* in support of their argument a court may consider the defendant's perspective. **See** Filing No. 12 - Response p. 6-7. *Fitzgerald* neither involved a removal action nor a non-compete agreement. *Fitzgerald Railcar Servs. of Omaha, Inc. v. Chief Indus, Inc.*, 141 F. App'x 491 (8th Cir. 2005). In *Fitzgerald*, the plaintiff, Fitzgerald Railcar Services of Omaha, Inc. (Fitzgerald), was the defendant's, Chief Industries, Inc. (Chief), commercial tenant who filed suit seeking a declaration that the lease agreement was valid, enforceable, and had not been breached. *Id.* at 492. Following an adverse ruling, Chief appealed. *Id.* One of the grounds of appeal was that the district court did not have jurisdiction. *Id.* Chief argued the amount in controversy was less than the $75,000 jurisdictional amount because the lease payments were below $60,000. *Id.* The *Fitzgerald* court stated "the value of the object of litigation is not measured simply by the amount in alleged default, as Chief contends, but also by the value of the lease agreement if terminated." *Id.* (**citing** *Hunt*, 432 U.S. at 347 (stating the value of the object of litigation is measured by the losses that will follow from enforcement); *City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983) ("To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit.")).

The *Fitzgerald* court considered if the lease were invalid, Fitzgerald, whose business operated at a $100,000 annual net profit, would cease business, lose their profit, and need to relocate. *Fitzgerald*, 141 F. App'x at 492-93. The court concluded Fitzgerald had a significant economic stake in continuing the lease that well exceeded the jurisdictional requirement of $75,000. *Id.* Although *Fitzgerald* cites a Tenth Circuit case that measures the amount in controversy from either party, *Fitzgerald* only considered the plaintiff's loss and not the defendant's loss therefore affirming the use of the plaintiff's viewpoint rule.

MSI also cites *Hatridge v. Aetna Casualty & Surety Company* in support of their argument the amount in controversy can be measured from the defendant's perspective. **See** Filing No. 12 - Response p. 4-5. Although *Hatridge* was a removal case, it did not

7

involve a non-compete issue. In **Hatridge**, Gene Rodney Hatridge and Barbara Ann Hatridge (Mrs. Hatridge) filed an action against Herman Reid (Reid) for negligence and loss of consortium in relation to an accident Reid caused. *Hatridge*, 415 F.2d at 811. After obtaining a default judgment against Reid in the amount of $50,000 plus $10,000 for loss of consortium for Mrs. Hatridge, Mrs. Hatridge instituted an action against Aetna Casualty and Surety Company (Aetna) for $9,999.99. *Id.* Aetna removed the action and Mrs. Hatridge moved for remand. *Id.* Mrs. Hatridge argued the amount in controversy is measured from the plaintiff's perspective and, in order to avoid removal to federal court, she could waive a part of the recovery for which she was entitled. *Id.* at 814.

The **Hatridge** court stated Mrs. Hatridge is correct in that the amount in controversy was usually viewed from the plaintiff's viewpoint. *Id.* However, there are circumstances "where the value of what the plaintiff seeks is not the same as the value of what the defendant stands to lose if the plaintiff is successful." *Id.* Nevertheless, the court stated "judicial comment is frequently to the effect that the amount in controversy is to be determined from the viewpoint of the plaintiff." *Id.* The **Hatridge** court followed the plaintiff's viewpoint rule concluding "we do not feel free to place particular reliance, in our present decision, upon the cases . . . which utilize the defendant's standpoint approach. Instead, we rest our decision upon the nature of Mrs. Hatridge's claim and its inescapable dependency upon that of her husband." *Id.* at 816.

Although MSI invites this court to adopt a different viewpoint and determine the value of the litigation based on MSI's potential financial consequences, this court declines such an invitation. ***Usery*** clearly states the Eighth Circuit has "never endorsed" the defendant's viewpoint rule. See *Usery*, 606 F.3d at 1019. Further, the cases MSI cites within the Eighth Circuit, as mentioned above, measure the amount in controversy from the plaintiff's viewpoint. Therefore this court will utilize the plaintiff's viewpoint rule to determine the amount in controversy.

The value of the lawsuit for Phillips is a declaration that the Agreement is unenforceable and that Phillips is not violating the Agreement. The value, from a monetary viewpoint, is not the financial consequences for MSI, but is measured by comparing what Phillips would earn if the non-compete clause were valid to what Phillips would earn if the

clause were invalid. Phillips' salary at MSI was $42,913.51 through August 10, 2012, $61,851.10 in 2011, $57,857.86 in 2010, and $58,021.70 in 2009. Assuming the Agreement was valid, Phillips' loss would be based on the salary he would lose from not being able to work. According to Phillips' past salary he would lose, at most, $62,000. If Phillips was prevented from working in his new position for one year Phillips' loss would be under the $75,000 jurisdictional minimum. MSI has not shown by preponderance of the evidence that the jurisdictional amount is satisfied. Further, even assuming this court measured the amount in controversy from MSI's perspective, MSI has not shown by preponderance of the evidence the amount in controversy would exceed the jurisdictional minimum. MSI speculates it will lose business when Phillips "poaches" MSI's customers. There is no evidence MSI has lost business related to Phillips' position with Audiology or that Phillips has "poached" MSI's customers in the time that has passed since Phillips left MSI. As remand is favored, the court finds this matter should be remanded to state court as this court does not have jurisdiction.

### B.    Attorney Fees and Costs

Phillips argues he is entitled to attorney's fees and costs for defending against this action. **See** Filing No. 9 - Brief p. 7. Phillips argues the defendants "have engaged in a concerted effort to circumvent Nebraska's clear public policy prohibiting non-competition restriction." *Id.* Phillips argues this action was filed to prevent a prompt resolution of the dispute. *Id.* MSI argues it had an objectively reasonable belief that it was entitled to seek a federal forum for resolution of this case. **See** Filing No. 12 - Response p. 12-13. MSI states there was no intent to delay resolution of the dispute. *Id.*

"The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal" under 28 U.S.C. § 1447(c). *Martin*, 546 U.S. at 141.

The award of reasonable attorney's fees and costs in this matter is inappropriate. Although the Eighth Circuit has endorsed the "plaintiff's viewpoint rule," this Circuit has also noted how other circuits measure the amount in controversy from the defendant's viewpoint. MSI made a good-faith attempt to remove the case based on that discussion and provided relevant evidence in support of its removal action. Further, there is no evidence this removal action was a delay tactic. For these reasons, the court denies Phillips' request for attorney's fees and costs.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that:**

Phillips' Motion to Remand (Filing No. 6) be granted with respect to remand and denied for attorney's fees and costs. Further, MSI's Motion to Dismiss, or in the alternative, Transfer Venue (Filing No. 5) be deemed moot.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of November, 2012.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.